No. 61,022

STATE OF KANSAS, *Appellee,* v. SCOTT CHISHOLM, *Appellant.*

(755 P.2d 547)

Opinion filed June 3, 1988.

*Kurt D. Tilton,* legal intern, argued the cause, and *David Gottlieb,* supervising attorney, Kansas Appellate Practice Clinic, of Lawrence, and *Benjamin C. Wood,* chief appellate defender, of Topeka, were with him on the brief for appellant.

*Gabrielle M. Thompson,* assistant county attorney, argued the cause, and *Robert T. Stephan,* attorney general, was with her on the brief for appellee.

The opinion of the court was delivered by

HERD, J.: This is a criminal action in which Scott Chisholm was extradited to Kansas and convicted by a jury of two counts of aggravated incest with his eight-year-old stepdaughter (V) in violation of K.S.A. 1987 Supp. 21-3603. The execution of Chisholm's sentence of consecutive three- to seven-year terms for each count was suspended, and Chisholm was placed on four years' probation under intensive supervision in Sacramento County, California. Chisholm appeals.

The victim's mother married Scott Chisholm on April Fools Day, 1985. V and her younger brother and sister were living with their grandmother in Clay Center at the time and did not move to Ogden to live with their mother and new stepfather until school was out in May.

After spending the summer with the children, Chisholm and the mother moved to California in October and the children were again left with the grandmother. Chisholm and the mother separated in March of 1986 and the mother returned to Kansas.

During the summer of 1986 V and her best friend were ex-

changing confidences. V suddenly told her friend she needed to tell her about a bad thing that had happened to her. She said Chisholm had secretly touched her in "private parts" the summer before. The friend told V she should tell her mother, but V said she was afraid. A few days later she woke her mother early in the morning and told her.

V's mother called the police and SRS and they arranged to videotape V's story pursuant to K.S.A. 1987 Supp. 22-3434. V told of two incidents which had taken place during the summer of 1985. The first took place when her mother went shopping and her sister and brother were playing at the neighbors. Chisholm told V to come into his bedroom and made her slide her hand back and forth on his "private parts." She showed the interviewer what she meant by "private parts" by the use of dolls. She said the defendant's "private parts" looked like her brother's, which she had seen once, except it was bigger, was standing up, and had hair around it.

The other incident occurred early one morning. V went into her mother's and stepfather's bedroom to ask if she could watch cartoons in the livingroom. Her mother said yes and went back to sleep. Chisholm went into the livingroom where V was sitting on the floor in a nightgown and told her to come sit on his lap. He then told her to go into the bathroom and take off her panties. She did this and came back and sat on the floor. He again told her to come sit on his lap and to turn around facing him with her legs over his. He lowered his shorts and put his fingers in her "private parts." She said Chisholm told her "this is the way to have sex and when you meet a boy in your life that you really like, this is what you do." She demonstrated what happened with dolls.

Chisholm was charged with two counts of aggravated incest in violation of K.S.A. 1987 Supp. 21-3603. The videotape was shown at the preliminary hearing and V was subjected to cross-examination as to her videotaped testimony, in the presence of Chisholm.

Before trial, the State moved that V's testimony be taken by closed-circuit television or, in the alternative, by prerecorded videotape pursuant to K.S.A. 1987 Supp. 22-3434. The State noted V was less than 13 years old and had expressed fear of

Chisholm. It argued closed-circuit television would best allow orderly presentation of evidence and noted Chisholm's constitutional rights would be safeguarded by provisions for objections and cross-examination. The State preferred the use of closed-circuit television because it allowed contemporaneous objections.

K.S.A. 1987 Supp. 22-3434 makes the decision discretionary with the court whether to use its prescribed methods to obtain the testimony of child victims. The court noted that although the statute did not set forth criteria to be applied by the court in exercising its discretion, it felt the non-mandatory language put a burden on the State to show why its request should be granted.

The State replied one of the purposes of the statute was to spare a child victim from being forced to confront the defendant again and again. V had told her mother, the social worker, and the prosecutor she was afraid of Chisholm. V's mother testified V had not told her of the abuse until after she had explained to the children she was divorcing Chisholm and he would not be coming back to Kansas. The State observed V had been able to give coherent, detailed testimony when she was interviewed by the social worker, but when she was faced with Chisholm during cross-examination at the preliminary hearing she had seemed frightened by him and overawed by the courtroom. She had been unable to say much at all, and the State argued the chances of her being able to coherently testify again at trial if confronted with Chisholm were "dim."

Defense counsel argued it was important the jury see V in person and not see her as being given special treatment. However, he was primarily concerned that the court not grant the State's alternative request for prerecorded tape. Chisholm was not planning to be in Kansas until just before the trial, and it would be inconvenient for him to come earlier in order to exercise his right to observe, unseen, the videotaping. No constitutional objections were raised.

The court denied the State the opportunity to prerecord V's testimony, but held, in view of the contrast between V's demeanor when confronted with Chisholm at the preliminary hearing and her demeanor on videotape, it would be appropriate for V to give her testimony on closed-circuit television and avoid facing Chisholm.

At trial, V's friend repeated her earlier testimony and spoke of V's fear at telling the secret. V's mother repeated her testimony and added that after that summer, V had become withdrawn and began having problems in school, which had never happened before.

V testified from a special room in which a camera booth had been installed so Chisholm and the cameraman remained unseen to V and the attorneys. After V was sworn in, she gave direct testimony, subject to contemporaneous objection by defense counsel who was also in the room with her. A cable was connected so the judge could communicate with the attorneys and give his rulings. V testified she was afraid all year to tell anyone what happened because she thought Chisholm would find out when he came back from California and be angry and hurt her. She said she was also embarrassed to talk about it, because she did not think things like this happened to other little girls.

After direct examination, the court granted a recess so Chisholm could privately confer with his counsel in a separate room before cross-examination began. After cross-examination, Chisholm testified in his own behalf, denying the incidents. The jury found Chisholm guilty of both counts of aggravated incest.

The constitutional issues raised on appeal were not presented at trial or in the motion for new trial. Although they are therefore not properly before us for review (*State v. O'Neal*, 238 Kan. 183, 187, 708 P.2d 206 [1985]), we will consider the issues as an exception to the rule and to serve the ends of justice. *Pierce v. Board of County Commissioners*, 200 Kan. 74, 434 P.2d 858 (1967).

The first issue is whether the use of closed-circuit television is unconstitutional. Chisholm contends K.S.A. 1987 Supp. 22-3434 violates a criminal defendant's Sixth Amendment right to confront his accuser without requiring the State to show its use is necessary. He argues the procedure violated his right to a fair trial in that it prejudiced the jury and could not constitutionally be imposed without a specific showing it was necessary to serve an essential State interest. He also argues the physical separation from his attorney during the testimony of V resulted in a denial of effective assistance of counsel.

Most of Chisholm's arguments were considered and rejected by this court in *State v. Johnson,* 240 Kan. 326, 729 P.2d 1169 (1986), *cert. denied* 481 U.S. 1071 (1987). In *Johnson,* we considered the constitutionality of K.S.A. 22-3434 in a case in which prerecorded videotaped testimony of a child victim was presented at trial. We held the statute did not violate the defendant's right to confront the witnesses against him, and held its detailed requirements and protection of cross-examination rights precluded the need to find the witness "unavailable." Chisholm, in arguing the State must show the procedure to be "necessary," is making the same argument. He argues the State's contention that V was frightened of him and *"almost* unable to give any testimony" in his presence at preliminary hearing was insufficient. He contends the State must show V was *unable* to give *any* testimony. This amounts to a requirement that the witness be unavailable, which we have held is not required under the statute.

Chisholm argues *Johnson* may be distinguished from the case at bar because it dealt with prerecorded videotape rather than closed-circuit television. There is no basis for distinction. The procedure for the use of closed-circuit television contains the same constitutional safeguards as videotape with the additional benefit that the court is able to rule on objections contemporaneously. Chisholm's first issue is resolved by *Johnson.* K.S.A. 1987 Supp. 22-3434 grants a defendant the essential elements of his right to confrontation. He and the jury observe the witness's testimony and demeanor. Most importantly, cross-examination, the main reason for the right of confrontation, is fully available. See *State v. Cathey,* 241 Kan. 715, 728, 741 P.2d 738 (1987).

The only missing element in using closed-circuit television rather than live courtroom testimony is the witness's observation of the defendant and the court during her testimony. Arguments are made that this element encourages the truth in an adult witness. However, it is more likely to inspire terror, trauma, and speechlessness in a small child. The legislature, in searching for the best means by which the truth could be ascertained, wisely provided an alternative method of adducing testimony of children under 13 years of age which preserves the right of cross-examination but eliminates the potential intimidation of a face-to-face meeting between an accused and a child victim.

The second issue is whether K.S.A 1987 Supp. 22-3434 impinges upon a criminal defendant's right to a fair trial guaranteed by the 14th Amendment without requiring the court to consider less prejudicial alternatives before finding the procedure serves an essential State interest. See *Holbrook v. Flynn,* 475 U.S. 560, 89 L. Ed. 2d 525, 106 S. Ct. 1340 (1986); *Globe Newspaper Co. v. Superior Court,* 457 U.S. 596, 73 L. Ed. 2d 248, 102 S. Ct. 2613 (1982).

Chisholm argues his separation from his accuser encroached upon his fundamental right to be presumed innocent by the jury, for it could conclude he must be guilty if the child was protected from facing him. He maintains the precautions implying the child had been traumatized might cause the jury to be more sympathetic to her testimony, and the unique mode by which it was conveyed might cause the jury to place greater emphasis on her testimony than his. He complains the court made no explanation to the jury to dispel possible prejudicial effects.

Chisholm requested no explanation at trial, and suggested no alternatives to the procedure outlined by the legislature. The jury was instructed at the close of testimony that Chisholm must be presumed innocent until proven guilty beyond a reasonable doubt. In the absence of either a contemporaneous objection or a request for an instruction by the defendant, we find no error.

The final issue is whether Chisholm's brief separation from his counsel during V's testimony constituted denial of effective counsel. Chisholm makes no attempt to meet his burden of showing the two prongs of deficiency and prejudice mandated by *Strickland v. Washington,* 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674, *reh. denied* 467 U.S. 1267 (1984), and instead relies on *United States v. Cronic,* 466 U.S. 648, 658-59, 80 L. Ed. 2d 657, 104 S. Ct. 2039 (1984), which held circumstances in which counsel is prevented from assisting a criminal defendant during a critical stage of the proceeding may constitute constitutional error per se. Chisholm's argument misses the point. He was vigorously represented by counsel during this critical stage in the trial. The court did not require Chisholm's attorney to be with the witness during direct testimony, rather than with Chisholm behind the booth. It was obviously in Chisholm's best

interests that he not confer with his attorney at that point. The only right taken from Chisholm was the doubtful tactic of writing notes or whispering in his counsel's ear during direct testimony. Chisholm was allowed to consult privately with his counsel before cross-examination of V. He could have had a telephone hookup with his attorney during both direct and cross-examination of V had he requested it. He made no such request. This issue is without merit.

The judgment of the trial court is affirmed.